FILED

$120

JUL 22 2024

Beth Parks, Clerk
By ____ Deputy Clerk

Clark Hensley
HENSLEY LAW, PLLC
P.O. Box 4105
Butte, MT 59702
(406) 560-5152
hensleylawmt@outlook.com

Attorney for Plaintiff

**MONTANA SECOND JUDICIAL DISTRICT COURT**
**SILVER BOW COUNTY**

| | | |
|---|---|---|
| ALYSHA JEFFERY, Plaintiff, | * | No. DV-24 - 207 |
| v. | * | |
| UNDER CANVAS INC., VICTORIA FORHAN, SEAN RUSH, and JOHN DOES 1-50. | * | **COMPLAINT AND JURY DEMAND** |
| Defendants. | * | KURT KRUEGER Judge, Dept. 1 |

SUMMONS ISSUED

Plaintiff Alysha Jeffery, by and through her counsel of record Hensley Law, PLLC, files this Complaint against Defendants Under Canvas Inc., Victoria Forhan, Sean Rush, and John Does 1-50 for: (1) unlawfully terminating her employment without good cause and in violation of Under Canvas Inc.'s written personnel policies and procedures;[1] and (2) failing to pay her full amount of wages

[1] Defendants also unlawfully discriminated against Alysha on the basis of her sex and pregnancy status. Alysha presently has a discrimination complaint pending before the Montana Department of Labor, Human Rights Bureau. She will amend this Complaint as necessary based on the outcome of that case.

due upon her separation from employment. Alysha respectfully provides the following facts in support of her Complaint:

## JURISDICTION AND VENUE

1. Alysha resides in Silver Bow County, Montana and, at all times relevant to this Complaint, was employed by Defendant Under Canvas Inc. to perform services in Silver Bow County, Montana.

2. Upon information and belief, Defendant Under Canvas Inc. is a Delaware corporation with its principal place of business in Montana. Under Canvas Inc. employs Montana residents to perform employment duties within the state of Montana, owns property in Montana, and conducts business in the state of Montana. Under Canvas Inc. unlawfully terminated Alysha's employment and failed to pay her wages in Montana.

3. Upon information and belief, Defendant Victoria Forhan is Under Canvas Inc.'s Vice President of Human Resources and Compliance and she unlawfully terminated Alysha's employment and failed to pay her wages in Montana.

4. Upon information and belief, Defendant Sean Rush is Under Canvas Inc.'s Chief Operating Officer and he unlawfully terminated Alysha's employment and failed to pay her wages in Montana.

5. Upon information and belief, John Does 1-50 are persons or entities, including but not limited to, principals, partners, officers, directors, employees, agents, and assumed business names of and entities affiliated with the other defendants, that are potentially legally responsible to Alysha independently and, based on the allegations herein, due to principles of employment, agency, partnership, indemnity, contribution, and vicarious liability, including but not limited to respondeat superior.

6. Venue is proper in Silver Bow County pursuant to Montana Code Annotated §§ 25-2-118, 121, and 122.

7. Jurisdiction is proper in district court pursuant to Montana Code Annotated § 3-5-302.

## FACTS

8. Alysha worked for Under Canvas Inc. from April 19, 2021 until Ms. Forhan and Mr. Rush unlawfully terminated her employment on March 1, 2024.

9. Alysha predominately worked remotely for Under Canvas Inc. in Silver Bow County, Montana.

10. On April 19, 2021, Under Canvas Inc. hired Alysha as its Payroll and Benefits Manager.

11. From April 2021 until March 2023, Alysha reported to Under Canvas Inc.'s Chief Financial Officer. Dan Betts.

12. From March 2023 until January 2024, Alysha reported to Under Canvas Inc.'s Controller, Amanda Margheim.

13. From January 2024 until March 2024, Alysha reported to Ms. Forhan.

14. Throughout her employment at Under Canvas Inc., Alysha competently and diligently performed her employment responsibilities. She received stellar performance reviews from Mr. Betts, Ms. Margheim, and Ms. Forhan.

15. As a result of Alysha's superb work performance, Under Canvas Inc. continuously rewarded her performance:

- Under Canvas Inc. promoted Alysha to Director of Payroll and Benefits in October 2022;
- Under Canvas Inc. declared Alysha employee of the month sometime in 2023;
- Under Canvas Inc. awarded Alysha ownership interests (5,446 Class D-Units) in UC Management Investment, LLC in February 2023;
- Under Canvas Inc. increased Alysha's salary to $100,000 per year together with a 10% annual bonus in November 2023;
- Under Canvas Inc. awarded Alysha a 10% annual bonus check in January 2024.

16. Alysha achieved her success at Under Canvas Inc. through hard work, determination, and a skill set she accumulated through hands-on work experience. She does not have a college degree.

17. Alysha became pregnant in October 2023 and reported her pregnancy to Ms. Forhan on January 10, 2024. Ms. Forhan also happened to be expecting at that time and Alysha's expected maternity leave conflicted with hers, which created the potential for a gap in the payroll department's management during their expected maternity leaves.

18. After Alysha reported her pregnancy, Under Canvas Inc. and Ms. Forhan began treating her differently.

19. Prior to reporting her pregnancy, Alysha oversaw two positions: a filled Lead Payroll and Benefits Administrator position and an open Senior Payroll Technician position:



20. Soon after reporting her pregnancy, Ms. Forhan directed Alysha to add a Payroll and Benefits Manager position, which would report to Alysha and oversee the other two positions:




21. Ms. Forhan instructed Alysha to mirror the duties and responsibilities of the Payroll and Benefits Manager position with Alysha's then-current Director of Payroll and Benefits position. Ms. Forhan assured Alysha that she would expand the duties and responsibilities of the Director of Payroll and Benefits position to further her position at Under Canvas Inc., but never formally changed the position.

22. In January 2024, Ms. Forhan required Alysha to prepare a presentation on payroll best practices, time and attendance management, and a question-and-answer session for managers on the human resources information

system for a leadership retreat scheduled for later that month – January 22-25, 2024 – in Montana. Alysha presented at the previous leadership retreats in 2022 and 2023.

23. On January 24, 2024, Ms. Forhan did not allow Alysha sufficient time for her presentation. She then instructed Alysha to present on January 25, 2024, but Under Canvas Inc. excluded Alysha's presentation on that day as well.

24. On February 9, 2024, Ms. Forhan posted the Payroll and Benefits Manager position with a salary range similar to Alysha's position and began conducting applicant interviews all without Alysha's involvement.

25. Sometime after February 9, 2024 and prior to February 28, 2024, Ms. Forhan offered the Payroll and Benefits Manager position to one of the applicants without ever consulting Alysha.

26. Alysha scheduled a meeting with Ms. Forhan on February 28, 2024, to discuss her health care status and reasonable accommodations due to her pregnancy. During that meeting, without any prior notice, and despite recent plans to expand the payroll department, Ms. Forhan and Mr. Rush, notified Alysha that Under Canvas Inc. was eliminating her position and terminating her employment as of March 1, 2024.

27. During the February 28, 2024, meeting, Mr. Rush and Ms. Forhan assured Alysha that her termination was solely due to costs and not the result of any performance related issues.

28. Under Canvas Inc., Ms. Forhan, and Mr. Rush terminated Alysha's employment while she was working from her primary work location in Silver Bow County, Montana.

29. On the exact same day Under Canvas Inc. eliminated Alysha's position – March 1, 2024, Ms. Forhan hired a Payroll and Benefits Manager with a comparable salary and nearly identical job description as Alysha. The new Payroll and Benefits Manager was not pregnant at the time of her hire.

30. Following her discharge, Alysha requested Under Canvas Inc. to provide a copy of her personnel files, its employment policies and procedures, and documentation regarding her ownership interests in UC Management Investment, LLC. Under Canvas Inc. refused to provide them.

31. Alysha experienced severe and extreme emotional distress, including but not limited to, depression and anxiety, as a result of her termination, loss of salary, and loss of employment related benefits, including but not limited to, insurance and maternity leave.

32. Alysha also experienced amplified pregnancy complications after losing her employment during her pregnancy, which caused her to become

physically sick, unable to eat, and require her to seek medical treatment and hospitalization.

33. Since her termination, Alysha has searched and applied for comparable employment opportunities, but the only comparable director-level positions require a four-year college degree.

34. Under Canvas Inc. also failed to pay Alysha $421.14 in wages immediately upon her termination. Of the unpaid amount, $341.14 arose from Under Canvas Inc. withdrawing premiums for the entire month of March when it terminated her benefits as of March 1, 2024. The remaining $80 arose from Under Canvas Inc. refusing to pay for an expense that Ms. Forhan instructed Alysna to incur prior to her termination.

35. Under Canvas Inc. eventually paid half ($170.57) of the unpaid wages attributed to its unlawful overcollection of premiums on April 19, 2024 and reimbursed Alysha for the $80 expense on May 2, 2024, but refused to pay the remaining $170.57 of unpaid wages.

36. Under Canvas Inc. withheld a total of $341.14 per month in premiums for Alysha's Health Flexible Spending Account, Hospital Indemnity, Supplemental Child Life, Supplemental Employee Life, and Short-Term Disability coverage.

37. Under Canvas Inc. withheld the entire amount of monthly premiums for employee benefits through its employees' first two paychecks each month. In

months where a third pay check was due, Under Canvas Inc. did not withhold any amount for benefits on the third paycheck.

38. Under Canvas Inc. withheld Alysha's monthly premiums for the coverages at issue for the month of January by withholding $170.57 on each of the two paychecks she received that month on January 12 and January 26, 2024.

39. Under Canvas Inc. withheld Alysha's monthly premiums for the coverages at issue for the month of February by withholding $170.57 on each of the two paychecks she received that month on February 9 and February 23, 2024.

40. Under Canvas Inc. withheld Alysha's entire monthly premium for the coverages at issue for the month of March by withholding $341.14 on her final paycheck on March 1, 2024 despite terminating Alysha's coverage for those benefits on the same day.

41. Under Canvas Inc. charged Alysha the full amount of coverage for the month of March when she did not receive any of the benefits at issue that month. Under Canvas Inc. has only since paid half of the unlawful overcollection.

**COUNT I - WRONGFUL DISCHARGE**

42. Alysha restates paragraphs 1-41 as set forth above.

43. Montana law prohibits employers from terminating employees that have completed their probationary periods without good cause. Mont. Code Ann. § 39-2-904(1)(b).

44. Montana law further prohibits employers from terminating employees in violation of the employer's written personnel policy when the violation deprives the employee of a fair and reasonable opportunity to maintain their employment. Mont. Code Ann. § 39-2-904(1)(c).

45. Good cause does not exist to support a position elimination if the employer reclassifies the position and hires a replacement in the guise of a departmental restructuring or otherwise controlling costs. *Delaware v. K-Decorators Inc.*, 1999 MT 13, ¶¶ 57-60, 293 Mont. 97, 973 P. 2d 818; *Kestell v. Heritage Health Care Corp.*, 259 Mont. 518, 525-527, 858 P.2d 3, 8-9 (1993); *see also Quarantino v. Tiffany & Co.*, 71 F.3d 58, 65 (2nd Cir. 1995).

46. Under Canvas Inc. and its officers Ms. Forhan and Mr. Rush unlawfully terminated Alysha without good cause. Alysha completed her probationary period back in 2021. Alysha's history of superb work performance and rewards demonstrate that good cause did not exist for her discharge. Ms. Forhan and Mr. Rush's assurances that her termination was not due to any performance related issues during the February 28, 2024, meeting reaffirm that no legitimate business reason existed for her termination.

47. Under Canvas Inc., Ms. Forhan, and Mr. Rush's attempt to justify Alysha's termination as a position elimination due to costs defies credulity. On the

same day they eliminated Alysha's position, they hired her replacement with a similar salary and nearly identical job responsibilities.

48. Ms. Forhan required Alysha to create a substantially similar position that Alysha would supposedly manage. Ms. Forhan then posted that position, interviewed applicants, and hired an individual for that position without ever consulting Alysha even though Alysha would supposedly manage the new position. Under Canvas Inc., Ms. Forhan, and Mr. Rush then terminated Alysha on the exact same day they hired the individual for the new position.

49. Under Canvas Inc., Ms. Forhan, and Mr. Rush did not eliminate Alysha's position due to costs. They retitled the position and hired her replacement without good cause and in violation of Under Canvas Inc.'s written personnel policy. Their ill-conceived attempt to try and mask their unlawful conduct by characterizing the termination as a cost-saving restructuring defies the facts in this case and all sense of reality.

50. Ms. Forhan further had personal motive to terminate Alysha due to her pregnancy because Alysha's expected maternity leave conflicted with her own, which would have created the potential for a gap in payroll management during their expected maternity leaves.

51. As a result of Under Canvas Inc., Ms. Forhan, and Mr. Rush's wrongful discharge, Alysha: (1) has suffered extreme and severe emotional

distress; (2) has endured physical sickness, the inability to eat, and hospitalizations; (3) has lost past and will lose future wages and benefits, including but not limited to, her salary, bonuses, health insurance, and ownership interest in UC Management Investment, LLC; and (4) will more than likely have to attend and sustain the costs of a post-secondary education to obtain a four-year degree in order to fully mitigate her damages and obtain a comparable director-level position.

## COUNT II - WAGE CLAIM

52. Alysha restates paragraphs 1-51 as set forth above.

53. When an employer terminates or lays off an employee, the employer must pay all of the terminated employees wages immediately upon termination. Mont. Code Ann. § 39-3-205(2).

54. Wages include any money due an employee from the employer or employers, whether to be paid, by the hour, day, week, semimonthly, monthly, or yearly. Mont. Code Ann. § 39-3-201.

55. An employer who fails to pay an employee at the times prescribed by law is guilty of a misdemeanor and must be assessed a penalty up to 110% of the wages due and unpaid. Mont. Code Ann. § 39-3-206.

56. Montana law does not require employees to exhaust administrative remedies prior to instituting an action in district court for unpaid wages, penalties,

and attorney fees. *Stanley v. Holms*, 267 Mont. 316, 322, 883 P.2d 837, 841 (1994).

57. Under Canvas Inc. failed to timely pay Alysha $421.14 as required by law.

58. Under Canvas Inc. still owes Alysha $170.57 in unpaid wages.

59. The Court should award Alysha her unpaid wages, the maximum penalty on the $421.14 that Under Canvas Inc. failed to timely pay as required by law, interest, costs, and attorney fees.

**RELIEF SOUGHT**

WHEREFORE, Alysha prays that:

1. The Court enter judgment against the Defendants in an amount to be proven at trial, including but not limited to, damages for back pay, front pay, future lost benefits, lost ownership interest in UC Management Investment, LLC, emotional distress, physical sickness, tuition and other costs to mitigate damages, unpaid wages, penalties, punitive damages. and interest:

2. The Court find any statutory limitations on Alysha's damages including, but not limited to, those found in Montana Code Annotated § 39-2-905 to be unconstitutional.

3. Judgment be entered in favor of Alysha, together with costs of suit and attorney fees; and,

4. For any further relief the Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Alysha hereby demands a trial by jury on all issues in this matter.

DATED this 22nd day of July, 2024.

HENSLEY LAW, PLLC

By ____________________
Clark R. Hensley