Clark Hensley
HENSLEY LAW, PLLC
P.O. Box 4105
Butte, MT 59702
(406) 560-5152
clark@hensleylawmt.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | | |
|---|---|---|
| ALYSHA JEFFERY, | * | |
| | * | No. CV-24 -181-BU-KLD |
| Plaintiff, | * | |
| v. | * | |
| | * | **FIRST AMENDED** |
| UNDER CANVAS INC., VICTORIA | * | **COMPLAINT AND** |
| FORHAN, SEAN RUSH, and JOHN | * | **JURY DEMAND** |
| DOES 1-50. | * | |
| | * | |
| Defendants. | * | |
| | * | |

Plaintiff Alysha Jeffery, by and through her counsel of record Hensley Law, PLLC, files this Complaint against: (1) defendant Under Canvas Inc. for unlawfully terminating her employment without good cause and in violation of Under Canvas Inc.'s written personnel policies and procedures;[1] and (2) against all defendants for failing to pay her full amount of wages due upon her separation

[1] Defendants also unlawfully discriminated against Alysha on the basis of her sex and pregnancy status. Alysha presently has a discrimination complaint pending before the Montana Department of Labor, Human Rights Bureau. She will amend this Complaint as necessary based on the outcome of that case.

from employment. Alysha respectfully provides the following facts in support of her Complaint:

**JURISDICTION AND VENUE**

1. Alysha resides in Silver Bow County, Montana and, at all times relevant to this Complaint, was employed by defendant Under Canvas Inc. to perform services in Silver Bow County, Montana.

2. Upon information and belief, defendant Under Canvas Inc. is a Delaware corporation with its principal place of business in Montana. Under Canvas Inc. employs Montana residents to perform employment duties within the state of Montana, owns property in Montana, and conducts business in the state of Montana. Under Canvas Inc. unlawfully terminated Alysha's employment and failed to pay her wages in Montana.

3. Upon information and belief, defendant Victoria Forhan is Under Canvas Inc.'s Vice President of Human Resources and Compliance and failed to pay Alysha wages in Montana.

4. Upon information and belief, Defendant Sean Rush is Under Canvas Inc.'s Chief Operating Officer and he failed to pay Alysha's wages in Montana.

5. Upon information and belief, John Does 1-50 are persons or entities, including but not limited to, principals, partners, officers, directors, employees, agents, and assumed business names of and entities affiliated with the other

defendants, that are potentially legally responsible to Alysha independently and, based on the allegations herein, due to principles of employment, agency, partnership, indemnity, contribution, and vicarious liability, including but not limited to respondeat superior.

6. Prior to its removal to this Court, venue was proper in Silver Bow County pursuant to Montana Code Annotated §§ 25-2-118, 121, and 122.

7. Prior to its removal to this Court, jurisdiction was proper in state district court pursuant to Montana Code Annotated § 3-5-302.

## **FACTS**

8. Under Canvas Inc. offered Alysha a position of employment as Payroll and Benefits Manager in March 2021. Alysha accepted the position on March 30, 2021.

9. Alysha worked for Under Canvas Inc. from April 19, 2021 until Under Canvas unlawfully terminated her employment on March 1, 2024.

10. Alysha predominately worked remotely for Under Canvas Inc. in Silver Bow County, Montana.

11. On April 19, 2021, Alysha started her role as Under Canvas Inc.'s Payroll and Benefits Manager.

12. From April 2021 until March 2023, Alysha reported to Under Canvas Inc.'s Chief Financial Officer, Dan Betts.

13. From March 2023 until January 2024, Alysha reported to Under Canvas Inc.'s Controller, Amanda Margheim.

14. From January 2024 until March 2024, Alysha reported to Ms. Forhan.

15. Throughout her employment at Under Canvas Inc., Alysha competently and diligently performed her employment responsibilities. She received stellar performance reviews from Mr. Betts, Ms. Margheim, and Ms. Forhan.

16. As a result of Alysha's superb work performance, Under Canvas Inc. continuously rewarded her performance:

- Under Canvas Inc. promoted Alysha to Director of Payroll and Benefits in October 2022;
- Under Canvas Inc. declared Alysha employee of the month sometime in 2023;
- Under Canvas Inc. awarded Alysha ownership interests (5,446 Class D-Units) in UC Management Investment, LLC in February 2023;
- Under Canvas Inc. increased Alysha's salary to $100,000 per year together with a 10% annual bonus in November 2023 with the salary increase and bonus effective in January 2024;
- Under Canvas Inc. awarded Alysha a 10% annual bonus check in January 2024.

17. Alysha achieved her success at Under Canvas Inc. through hard work, determination, and a skill set she accumulated through hands-on work experience. She does not have a college degree.

18. Alysha became pregnant in October 2023 and reported her pregnancy to Ms. Forhan on January 10, 2024.

19. Alysha oversaw two positions: a filled Lead Payroll and Benefits Administrator position and an open Senior Payroll Technician position:




20. After January 10, 2024, Ms. Forhan directed Alysha to add a Payroll and Benefits Manager position, which would report to Alysha and oversee the other two positions:




21. Ms. Forhan instructed Alysha to mirror the duties and responsibilities of the Payroll and Benefits Manager position with Alysha's then-current Director of Payroll and Benefits position. Ms. Forhan assured Alysha that she would expand the duties and responsibilities of the Director of Payroll and Benefits position after they hired the manager position to further Alysha's career at Under Canvas Inc.

22. On February 9, 2024, Ms. Forhan posted the Payroll and Benefits Manager position with a salary range similar to Alysha's position.

23. Sometime after February 9, 2024 and prior to February 28, 2024, Ms. Forhan began conducting applicant interviews without Alysha's involvement, and selected top candidates without ever consulting Alysha.

24. Alysha identified topics for a scheduled meeting with Ms. Forhan on February 28, 2024, including an update on her health care status to discuss

reasonable accommodations due to her pregnancy. During that meeting, without any prior notice, and despite recent plans to expand the payroll department, Ms. Forhan and Mr. Rush, notified Alysha that Under Canvas Inc. was eliminating her position and terminating her employment as of March 1, 2024.

25. During the February 28, 2024, meeting, Mr. Rush and Ms. Forhan assured Alysha that her termination was solely due to costs and not the result of any performance related issues.

26. Under Canvas Inc., Ms. Forhan, and Mr. Rush terminated Alysha's employment while she was working from her primary work location in Silver Bow County, Montana.

27. Ms. Forhan and Mr. Rush knew Alysha was pregnant and especially vulnerable at the time they discharged her.

28. After notifying Alysha of her termination, Ms. Forhan offered the Payroll and Benefits Manager position to one of the applicants.

29. The new Payroll and Benefits Manager started on the next business day after Alysha's termination – March 4, 2024 – to perform the duties and responsibilities that Alysha previously performed.

30. Following her discharge, Alysha, through counsel, requested Under Canvas Inc. to provide a copy of her personnel files, its employment policies and procedures, and documentation regarding her ownership interests in UC

Management Investment, LLC. Under Canvas Inc. refused to provide them.

31. Alysha experienced severe and extreme emotional distress, including but not limited to, depression and anxiety, as a result of her termination, loss of salary, and loss of employment related benefits, including but not limited to, insurance, short-term disability coverage, hospital indemnity coverage, and maternity leave.

32. Alysha also experienced amplified pregnancy complications, including but not limited to, extreme hyperemesis, caused by the stress of losing her employment during her pregnancy. Alysha became physically sick, unable to eat, and required medical treatment and hospitalization as a result of her termination.

33. Following her discharge, Alysha received unemployment benefits.

34. Since her termination, Alysha has searched and applied for comparable employment opportunities, but the only comparable positions require or prefer a four-year college degree.

35. Under Canvas Inc., under the direction of Ms. Forhan and Mr. Rush, also failed to pay Alysha $421.14 in wages immediately upon her termination. Of the unpaid amount, $341.14 arose from Under Canvas Inc. withdrawing premiums for the entire month of March when it terminated her benefits as of March 1, 2024. The remaining $80 arose from Under Canvas Inc. refusing to pay for an expense

that Ms. Forhan instructed Alysha to incur prior to her termination.

36. Under Canvas Inc. eventually paid half ($170.57) of the unpaid wages attributed to its unlawful overcollection of premiums on April 19, 2024 and reimbursed Alysha for the $80 expense on May 2, 2024, but refused to pay the remaining $170.57 of unpaid wages.

37. Under Canvas Inc., under the direction of Ms. Forhan and Mr. Rush, withheld a total of $341.14 per month in premiums for Alysha's Health Flexible Spending Account, Hospital Indemnity, Supplemental Child Life, Supplemental Employee Life, and Short-Term Disability coverage. Those coverages terminated upon her discharge.

38. Under Canvas Inc. withheld the entire amount of monthly premiums for employee benefits through its employees' first two paychecks each month. In months where a third pay check was due, Under Canvas Inc. did not withhold any amount for benefits on the third paycheck.

39. Under Canvas Inc. withheld Alysha's monthly premiums for the coverages at issue for the month of January by withholding $170.57 on each of the two paychecks she received that month on January 12 and January 26, 2024.

40. Under Canvas Inc. withheld Alysha's monthly premiums for the coverages at issue for the month of February by withholding $170.57 on each of the two paychecks she received that month on February 9 and February 23, 2024.

41. Under Canvas Inc., under the direction of Ms. Forhan and Mr. Rush, withheld Alysha's entire monthly premium for the coverages at issue for the month of March by withholding $341.14 on her final paycheck on March 1, 2024 despite terminating Alysha's coverage for those benefits on the same day.

42. Under Canvas Inc., under the direction of Ms. Forhan and Mr. Rush, charged Alysha the full amount of coverage for the month of March when she did not receive any of the benefits at issue that month. Under Canvas Inc. has only since paid half of the unlawful overcollection.

## COUNT I - WRONGFUL DISCHARGE

43. Alysha restates paragraphs 1-42 as set forth above.

44. Montana law prohibits employers from terminating employees that have completed their probationary periods without good cause. Mont. Code Ann. § 39-2-904(1)(b).

45. Montana law further prohibits employers from terminating employees in violation of the employer's written personnel policy when the violation deprives the employee of a fair and reasonable opportunity to maintain their employment. Mont. Code Ann. § 39-2-904(1)(c).

46. Good cause does not exist to support a position elimination if the employer reclassifies the position and hires a replacement in the guise of a departmental restructuring or otherwise controlling costs. *Delaware v. K-*

*Decorators Inc.*, 1999 MT 13, ¶¶ 57-60, 293 Mont. 97, 973 P. 2d 818; *Kestell v. Heritage Health Care Corp.*, 259 Mont. 518, 525-527, 858 P.2d 3, 8-9 (1993); *see also Quarantino v. Tiffany & Co.*, 71 F.3d 58, 65 (2nd Cir. 1995).

47. Under Canvas Inc. unlawfully terminated Alysha without good cause. Alysha completed her probationary period back in 2021. Alysha's history of superb work performance and rewards demonstrate that good cause did not exist for her discharge. Ms. Forhan and Mr. Rush's assurances that her termination was not due to any performance related issues during the February 28, 2024, meeting reaffirm that no legitimate business reason existed for her termination.

48. Under Canvas Inc.'s attempt to justify Alysha's termination as a position elimination due to costs defies credulity. On the same day it eliminated Alysha's position, Under Canvas hired her replacement with a similar salary and nearly identical job responsibilities.

49. Ms. Forhan required Alysha to create a substantially similar position that Alysha would supposedly manage. Ms. Forhan then posted that position, interviewed applicants, and hired an individual for that position without ever consulting Alysha even though Alysha would supposedly manage the new position. Under Canvas Inc. then terminated Alysha and hired an individual for the new position to start on the very next business day.

50. Under Canvas Inc. did not eliminate Alysha's position due to costs. It retitled the position and hired her replacement without good cause and in violation of Under Canvas Inc.'s written personnel policy. Under Canvas Inc.'s ill-conceived attempt to try and mask its unlawful conduct by characterizing the termination as a position elimination due to costs defies the facts in this case and all sense of reality.

51. As a result of Under Canvas Inc.'s wrongful discharge, Alysha: (1) has suffered extreme and severe emotional distress; (2) has endured physical sickness, the inability to eat, and hospitalizations; (3) has lost past and will lose future wages and benefits, including but not limited to, her salary, bonuses, health insurance, and ownership interest in UC Management Investment, LLC; and (4) will more than likely have to attend and sustain the costs of a post-secondary education to obtain a four-year degree in order to fully mitigate her damages and obtain a comparable position.

**COUNT II - WAGE CLAIM**

52. Alysha restates paragraphs 1-51 as set forth above.

53. When an employer terminates or lays off an employee, the employer must pay all of the terminated employees wages immediately upon termination. Mont. Code Ann. § 39-3-205(2).

54. Wages include any money due an employee from the employer or employers, whether to be paid, by the hour, day, week, semimonthly, monthly, or yearly. Mont. Code Ann. § 39-3-201.

55. An employer who fails to pay an employee at the times prescribed by law is guilty of a misdemeanor and must be assessed a penalty up to 110% of the wages due and unpaid. Mont. Code Ann. § 39-3-206. Employer includes any individual acting directly or indirectly in the interest of an employer in relation to an employee. Mont. Code Ann. § 39-3-201(5).

56. Montana law does not require employees to exhaust administrative remedies prior to instituting an action in district court for unpaid wages, penalties, and attorney fees. *Stanley v. Holms*, 267 Mont. 316, 322, 883 P.2d 837, 841 (1994).

57. Under Canvas Inc., under the direction of Ms. Forhan and Mr. Rush, failed to timely pay Alysha $421.14 as required by law.[2]

58. Under Canvas Inc. still owes Alysha $170.57 in unpaid wages.

59. The Court should award Alysha her unpaid wages, the maximum penalty on the $421.14 that Under Canvas Inc., Ms. Forhan, and Mr. Rush failed to timely pay as required by law, interest, costs, and attorney fees.

---

[2] Under Canvas Inc. has refused to provide Alysha any documentation related to her ownership interest in UC Management Investment, LLC. If Under Canvas Inc. owed Alysha compensation at the time of her discharge for that interest, the value of it shall be considered part of this wage claim.

## COUNT III – DECLARATORY JUDGMENT

60. Pursuant to Montana and federal law, courts have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. Mont. Code Ann. § 27-8-201; 28 U.S.C. § 2201.

61. Any person whose rights, status, or other legal relations are affected by a statute may have determined any question of construction or validity arising under the statute and obtain a declaration of rights, status, or other legal relations thereunder. Mont. Code Ann. § 27-8-202.

***Constitutionality of Unemployment Offset***

62. House Bill No. ("HB") 254 from the 2021 Montana Legislative Session amended Montana Code Annotated § 39-2-905(2) to require courts to deduct the amount of unemployment compensation or benefits from the amount awarded for lost wages.

63. Unemployment benefits derive from taxes "to be used for the benefit of persons unemployed though no fault of their own." Mont. Code Ann. §§ 39-51-102, -201(22).

64. Montana's Constitution mandates that taxes must be used for public purposes. Mont. Const., Art. 8, § 1.

65. HB 254's amendment to § 39-2-905(2) requires the use of unemployment tax benefits to indemnify employers for their own wrongful

conduct in violation of the Montana Constitution both on its face and as applied to Alysha's claim.

***Construction of Managerial or Supervisory Employee***

66. HB 254 amended § 39-2-904(3) to provide employer's the broadest discretion when making a decision to discharge any managerial or supervisory employee.

67. HB 254 did not provide a definition for either a managerial or supervisory employee.

68. In the context of wrongful discharge actions, managerial or supervisory employees have acquired a peculiar and appropriate meaning in law as applying to sensitive employment positions.

69. As a result, the Court should construe the terms managerial or supervisory employee as only applying to sensitive managerial or supervisory employees – and not any employee that manages or supervises something or someone.

70. To the extent, the Court determines that the statute should be construed as applying to any employee that manages or supervises something or someone, the Court should find § 39-2-904(3) in violation of the Montana Constitution both on its face and as applied to Alysha's claim on the following bases:

(1) equal protection by arbitrarily and broadly treating non-sensitive managerial or supervisory employees differently than non-managerial or supervisory employees. Mont. Const. Art. II, § 4; and

(2) impairs the obligation of contracts for non-sensitive managers or supervisors that accepted employment contracts prior to HB 254's effective date.

***Constitutionality of Damage Limitations***

71. Montana Code Annotated § 39-2-905 prohibits non-economic damages in wrongful discharge actions and caps damages at four years of economic damages.

72. Section 39-2-905's damage limitations violate the Montana Constitution on their face and as applied to Alysha's claim by:

(1) depriving Alysha of her fundamental right to pursue life's basic necessities and acquire property with the full amount of damages she will sustain, but cannot mitigate, due to defendant's actions. Mont. Const. Art. II, § 3;

(2) depriving Alysha of her fundamental right to full legal redress. Mont. Const. Art. II, § 16;

(3) depriving Alysha of her fundamental right to have a jury determine her damages, interfering with her fundamental right to due process,

and violating the separate of powers doctrine in that same regard. Mont. Const. Art. II, §§ 17, 26; Art. III, § 1; and

(4) arbitrarily treating wrongful discharge claimants differently than other breach of contract claims, including breach of employment contract claims exempt from the Wrongful Discharge from Employment Act. Mont. Const. Art. II, § 4.

## RELIEF SOUGHT

WHEREFORE, Alysha prays that:

1. The Court enter judgment against the defendants in an amount to be proven at trial, including but not limited to, damages for back pay, front pay, future lost benefits, lost ownership interest in UC Management Investment, LLC, emotional distress, physical sickness, tuition and other costs to mitigate damages, unpaid wages, penalties, and interest;

2. The Court declare the statutory limitations and offsets on Alysha's damages including, but not limited to, those found in Montana Code Annotated § 39-2-905 to be unconstitutional.

3. The Court construe the terms "managerial or supervisory employee" in Montana Code Annotated § 39-2-904(3) pursuant to the peculiar and appropriate meaning in the context of wrongful discharges as only applying to "sensitive" positions. Alternatively, if construed broadly as applying to any employee that

manages or supervises anything or anyone, the Court declare § 39-2-904(3) unconstitutional.

4. Judgment be entered in favor of Alysha, together with costs of suit and attorney fees; and,

5. For any further relief the Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Alysha hereby demands a trial by jury on all issues in this matter, except the requests for declaratory judgment.

DATED this 31st day of January, 2025.

HENSLEY LAW, PLLC

By /s/ Clark R. Hensley
Clark R. Hensley